## **EXHIBIT A**

**Bidding Procedures Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **COLOR SPOT HOLDINGS, INC., et al.,**[1] | Case No. 18-11272 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref No. ___** |

**ORDER (I) SCHEDULING A HEARING ON THE APPROVAL OF THE
SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, AND
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN
BIDDING PROCEDURES AND ASSUMPTION AND ASSIGNMENT PROCEDURES,
AND THE FORM AND MANNER OF
NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for the entry of: (a) an order, (i) scheduling a hearing (the "**Sale Hearing**") on approval of the Sale of all or substantially all of the Debtors' Assets, or a portions thereof, free and clear of all liens, claims, Encumbrances, and other interests, and authorizing the assumption and assignment of certain Assumed Contracts in connection therewith; (ii) authorizing and approving certain bidding procedures for the Sale, attached hereto as Exhibit 1 (collectively, the "**Bidding Procedures**"), authorizing and approving certain Assumption and Assignment Procedures provided for herein, and authorizing and approving the form and manner of each of the foregoing; and (iii) granting related relief; and (b) a Sale Order (i) authorizing and approving the Debtors' entry into a Purchase Agreement or Agreements for the Assets (or a subset(s) thereof); (ii) authorizing and approving the Sale, free

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Color Spot Holdings, Inc. (7061); Color Spot Nurseries, Inc. (3266); Hines Growers, Inc. (5946); and Lone Star Growers, Inc. (4748).  The Debtors' principal offices are located at 27368 Via Industria, Suite 201, Temecula, CA 92590.

[2]    Capitalized terms used but not defined herein shall have the meanings given them in the Bidding Procedures (as defined below), or to the extent not defined therein, the Motion.

and clear of all Encumbrances other than those permitted by the subject Purchase Agreement; (iii) authorizing and approving the assumption and assignment of the Assumed Contacts in connection therewith; and (iv) granting related relief; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion; and upon the First Day Declaration; and this Court having found and determined that the relief sought in the Motion as to the Bidding and Auction Process (as defined below) is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion, the First Day Declaration and at any hearing in connection with the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:[3]

A.    This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

B.    Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

D.     The Debtors have demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.     The Stalking Horse Notice [*is/was*] appropriate and reasonably calculated to provide all interested parties with timely and proper notice of:  (i) the identification of the Stalking Horse Purchaser, including any affiliations with the Debtors; (ii) the Assets that are the subject of the Stalking Horse Agreement; (iii) a copy of the Stalking Horse Agreement; (iv) the purchase price provided for in the Stalking Horse Agreement; [*(v) the proposed Bid Protections*]; and (vi) the deposit paid by the Stalking Horse Purchaser.  No other or further notice is required of the foregoing.

F.     [*If a Stalking Horse Purchaser has been designated prior to the Bidding Procedures Hearing*: With respect to the Bid Protections:

- The Debtors have demonstrated a sound business justification for the Bid Protections set forth in the Stalking Horse Agreement.

- The Bid Protections are fair and reasonable.

- The Bid Protections are: (a) an actual and necessary cost and expense of preserving the Debtors' bankruptcy estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates, (c)

reasonable and appropriate, and (d) necessary to ensure that the Stalking Horse Purchaser would continue to pursue its proposed acquisition of the Assets.

- The Bid Protections would be a material inducement for the Stalking Horse Purchaser entering into the Stalking Horse Agreement. The Bid Protections likewise would induce the Stalking Horse Purchaser to submit a bid to purchase substantially all of the Debtors' Assets, so the Stalking Horse Purchaser has provided a benefit to the Debtors' bankruptcy estates by increasing the likelihood that the price at which the Assets are sold will reflect their true worth.]

G. Notice of the hearing for approval of this Order and the Sale Notice (defined below) are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the Auction, the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

H. The Bidding Procedures are (i) fair, reasonable, and appropriate; and (ii) designed to maximize recovery with respect to the Assets.

I. The Assumption and Assignment Procedures provided for herein and the Assumption Notice (as defined below) are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections (as defined below).

J. Entry of this Order is in the best interests of the Debtors, their estates and creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Those portions of the Motion seeking approval of (a) the Bidding Procedures, (b) the Assumption and Assignment Procedures, (c) the date and time of the Sale Hearing, (d) the [***procedures regarding entry into a/the selection of***] the Stalking Horse Agreement, and (e) the

noticing and objection procedures related to each of the foregoing, including, without limitation, the Stalking Horse Notice (as defined below), the notice of the Debtors' potential assumption and assignment of the Assumed Contracts, substantially in the form attached hereto as Exhibit 2 (the "**Assumption Notice**"), and the notice of the entry of this Order, substantially in the form attached hereto as Exhibit 3 (the "**Sale Notice**") (subclauses (a) – (e) above, collectively, the "**Bidding and Auction Process**"), are hereby GRANTED to the extent set forth herein.

2.      Any objections to the Motion as it pertains to the Bidding and Auction Process or the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

3.      The Bidding Procedures are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bidding Procedures and this Order.

4.      In the event that the Debtors enter into a Stalking Horse Agreement on or prior to July 2, 2018 (the "**Stalking Horse Deadline**") the Debtors shall file with the Court and serve on Motion Notice Parties a Stalking Horse Notice.  If the Stalking Horse Agreement satisfies the following conditions, (a) the Break-Up Fee does not exceed three percent (3.0%) of the aggregate cash purchase price; (b) the Expense Reimbursement does not exceed $350,000; and (c) the Consultation Parties have provided there affirmative consent to the stalking horse designation, the Debtors may submit an order under certification of counsel approving the

designation of the Stalking Horse Purchaser and Stalking Horse Agreement as a stalking horse without the need for further hearing, which order shall include findings consistent with those originally proposed in the form of order annexed to the Motion.   If the Stalking Horse Agreement does not satisfy each of the conditions (a) through (c) in the prior sentence, the Court shall hold a hearing to consider approval of the designation of the Stalking Horse Purchaser and Stalking Horse Agreement as a stalking horse to be held on, or as soon as the Court is available after, July 9, 2018 with objections due at 4:00 p.m. the day prior to such hearing.

5.      [*If a Stalking Horse Purchaser has been designated prior to the Bidding Procedures Hearing*: The Break-Up Fee and Expense Reimbursement set forth in the Stalking Horse Agreement are hereby authorized and approved.   The Break-Up Fee and Expense Reimbursement are hereby accorded administrative expense status pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code and shall be payable (and paid, if applicable) in accordance with the terms of the Stalking Horse Agreement.]

6.      Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.   The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures or the Sale, provided that the information was provided in accordance with this Order.

7.      For all purposes under the Bidding Procedures:  (a) any designated Stalking Horse Purchaser shall be considered a Qualifying Bidder, and any Stalking Horse Agreement shall be

6

considered a Qualifying Bid; (b) should they decide to credit bid, applicable parties holding a perfected security interest in the Assets may seek to credit bid some or all of their claims within the meaning of section 363(k) of the Bankruptcy Code and to the extent demonstrated by their security interest documentation; *provided* that the applicable parties shall have the right to credit bid their claims only with respect to the collateral by which such the applicable parties are secured; and (c) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

8.       The Bidding Procedures shall apply to the Potential Bidders, the Qualifying Bidders, the submission, receipt, and analysis of all bids relating to the Sale, and the conduct of the Sale and the Auction.

9.       The following "**Assumption and Assignment Procedures**" are hereby approved:

(a)       On or before June 29, 2018 (the "**Assumption Notice Deadline**"), the Debtors shall file with the Court and serve on each counterparty (each, a "**Counterparty**," and collectively, the "**Counterparties**") to a Target Contract a notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 3 (the "**Assumption Notice**").

(b)       The Assumption Notice shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Target Contracts.

(c)       If after the Assumption Notice Deadline additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts (such additional contracts, the "**Additional Contracts**"), as soon as practicable thereafter and in no event less than one (1) business day before the commencement of the Auction, the Debtors shall file with the Court and serve, by overnight delivery, on the affected Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections (as defined below) not later than: (i) the Contract Objection Deadline (as defined below) in the event that such Assumption Notice was filed and served within five (5) days of the Assumption Notice Deadline and (ii) two (2) hours prior to the commencement of the Sale Hearing in the event that such Assumption Notice was filed and served more than five (5) days after the Assumption Notice Deadline.

(d)     As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file with the Court and post of the Claims Agent Website a notice identifying the Successful Bidder (a "**Notice of Successful Bidder**"), which shall set forth, among other things, (i) the Successful Bidder and Back-Up Bidder (if any), (ii) the Selected Target Contracts (as defined below), (iii) the proposed assignee(s) of such Selected Target Contracts, and (iv) contact information of the proposed assignee, so that Counterparties to the Selected Target Contracts may obtain the Successful Bidder's Adequate Assurance Information (as defined below), which shall be provided to each affected Counterparty on a confidential basis.

(e)     No later than one (1) business day after conclusion of the Auction, the Debtors will cause to be served by overnight mail the Notice of Successful Bidder upon each affected Counterparty and all parties requesting notice under Bankruptcy Rule 2002.

(f)     If a Counterparty objects to (i) the Cure Amount for its Target Contract, (ii) the Debtors' ability to assume and assign the Target Contract, or (iii) the provision of adequate assurance of future performance, the Counterparty must file with the Court and serve on the Objection Notice Parties (as defined below) a written objection (a "**Contract Objection**"). Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on July 16, 2018** (the "**Contract Objection Deadline**"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Target Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.  If any Stalking Horse Purchaser is designated the Successful Bidder in accordance with the Bid Procedures, any objections to adequate assurance of performance by such Stalking Horse Purchaser shall be filed by the Contract Objection Deadline.   Any objections to adequate assurance of future performance by a Successful Bidder other than a Stalking Horse Purchaser shall be filed not later than two (2) hours prior to the commencement of the Sale Hearing.

(g)     The "**Objection Notice Parties**" are as follows: (i) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: M. Blake Cleary, Esq., Sean T. Greecher, Esq., and Ryan M. Bartley, Esq.); (ii) proposed counsel to any official committee of unsecured creditors appointed in the Debtors'

chapter 11 cases; (iii) counsel to Wells Fargo Bank, N.A.; (iv) counsel to Capital Farm Credit, FLCA; (v) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane M. Leamy, Esq.); and (vi) counsel to the Stalking Horse Purchaser, if any.

(h)    At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to any Successful Bidder of only those Target Contracts that have been selected by any Successful Bidder to be assumed and assigned (each, a "**Selected Target Contract**," and collectively, the "**Selected Target Contracts**").  The Debtors and their estates reserve any and all rights with respect to any Target Contracts that are not ultimately selected as Selected Target Contracts.

(i)    If no Contract Objection is timely received with respect to a Selected Target Contract: (i) the Counterparty to such Selected Target Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Selected Target Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Selected Target Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount for such Selected Target Contract shall be controlling, notwithstanding anything to the contrary in such Selected Target Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Target Contract against the Debtors and their estates or any Successful Bidder, or the property of any of them, that existed prior to the entry of the Sale Order.

(j)    To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the cure amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors and the Successful Bidder or fixed by the Court; *provided*, *however*, that if the Contract Objection relates solely to a Cure Dispute, the Selected Target Contract may be assumed by the Debtors and assigned to any Successful Bidder, provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or the

Successful Bidder, pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

(k)     Notwithstanding anything to the contrary herein, if after the Sale Hearing or the entry of the Sale Order additional executory contracts or unexpired leases of the Debtors are determined to be Target Contracts, as soon as practicable thereafter, the Debtors shall file with the Court and serve, by overnight delivery, on the Counterparties an Assumption Notice, and such Counterparties shall file any Contract Objections not later than fourteen (14) days thereafter.  If no Contract Objection is timely received, the Debtors shall be authorized to assume and assign such Target Contracts to any Successful Bidder, without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be subject to the terms of the Sale Order.

10.     The Debtors' decision to assume and assign any Target Contract is subject to this Court's approval and the closing of the Sale.  Accordingly, absent this Court's approval and the closing of the Sale, no Target Contracts shall be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these chapter 11 cases.

11.     The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The Assumption Notice is:  (a) reasonably calculated to (i) provide sufficient, effective notice to all Counterparties and any other affected parties of the Debtors' intent to assume and assign to any Successful Bidder some or all of the Target Contracts and (ii) afford the Counterparties the opportunity to exercise any rights affected by the Motion and the relief granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006; and (b) hereby approved.

12.     The inclusion of a contract, lease, or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory

contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

13.    The Stalking Horse Notice, the Assumption Notice, the Sale Notice, the Bidding Procedures, the Auction, the Sale Hearing, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, Auction, the Sale, the Sale Hearing, and the assumption and assignment to the Successful Bidder of the Target Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notice and objection periods are hereby approved.

14.    Within two (2) business days of the entry of this Order, the Debtors shall serve the Sale Notice on: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Wells Fargo Bank, N.A.; (3) counsel to Capital Farm Credit, FLCA; (4) counsel to Black Diamond Commercial Finance, L.L.C.; (4) all parties known by the Debtors to assert a lien on any of the Assets; (5) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Assets in the Debtors within the twelve (12) months prior to the Petition Date; (6) the Office of the United States Attorney for the District of Delaware; (7) the Office of the Attorney General in each state in which the Debtors operate or sell their goods; (8) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (9) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (10) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (11) all of the Debtors' other known creditors and equity security holders, including the Counterparties; and

(12) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the service date (collectively, the "**Sale Notice Parties**").

15.     In addition, the Debtors shall publish the Sale Notice once in the national edition of one of *The New York Times*, *USA Today*, or the *Wall Street Journal* as soon as practicable after the entry of this Order.  Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(*l*) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidders, and afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

16.     The Debtors shall post any Stalking Horse Notice, the Sale Notice and this Order on the website of the Debtors' claims and noticing agent, at http://dm.epiq11.com/ColorSpot.

17.     Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on July 16, 2018** (the "**Sale Objection Deadline**"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Objection Notice Parties.  If a Sale Objection is not filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party shall be barred from objecting to the Sale and shall not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

18.     Failure to file a Sale Objection on or before the Sale Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated by a Purchase Agreement with a Successful Bidder, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

19.     A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Notice Parties so as to be received on or before **July 16, 2018 at 5:00 p.m. (ET)** (the "**Bid Deadline**"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties.  To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket in these chapter 11 cases indicating the same.  Any party, other than any Stalking Horse Purchaser, that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline and (b) participate in the Auction.

20.     All persons or entities submitting a bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the Assets identified under the applicable Purchase Agreement.

21.     As part of its bid, each Qualifying Bidder must provide the Debtors information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the bidder's

financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such potential bidder; (b) the name of the proposed counterparty that will act as the assignee of any Target Contract; and (c) a contact person for the proposed assignee that affected Counterparties may directly contact in connection with the adequate assurance of future performance.  To the extent available, the Adequate Assurance Information may also include: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee; and (y) financial statements, tax returns and annual reports.

22.     The Debtors, the Consultation Parties, and the Counterparties to any Target Contracts included in an applicable bid shall keep confidential all Adequate Assurance Information provided to them under this Paragraph and shall be permitted to use and disclose such Adequate Assurance Information only as provided in this Order unless the Qualifying Bidder that provided such Adequate Assurance Information otherwise consents in writing.  Each Counterparty in receipt of Adequate Assurance Information shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Paragraph.  Such Counterparty may not use or disclose, except to representatives, attorneys, advisors and financing sources (collectively, "**Representatives**"), any confidential Adequate Assurance Information for any purpose other than:  (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; (b) in support of any objection (the "**Assignment Objection**") (subject to the limitations on disclosure set forth herein) by such Counterparty relating to adequate assurance of future performance; and (c) if the proposed assignee is successful and becomes a party to the Target Contract, on a confidential basis, in the ordinary course of the contractual relationship.  Any

Assignment Objection which includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s).  This Order authorizes the filing of any such Assignment Objections under seal, and on the docket with such non-public information redacted, without further order of this Court; *provided*, that unredacted versions of such Assignment Objections shall be served upon the Debtors and Consultation Parties, with a copy to the Court's chambers.  Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

23.    If only one Qualifying Bids is submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and may request at the Sale Hearing that this Court approve such Qualifying Bid and the transactions contemplated thereunder.  In the event that the Debtors timely receive two or more Qualifying Bids, the Debtors shall conduct the Auction on **July 18, 2018 at 10:00 a.m. (ET)**, at Young Conaway Stargatt & Taylor, LLP, 1000 King Street, Rodney Square, Wilmington, Delaware 19801, or such other date and time as the Debtors, after consultation with the Consultation Parties, may notify Qualifying Bidders who have submitted Qualifying Bids; *provided* that such other date and time is no earlier than one (1) business days following the delivery of such notice.

24.    Each Auction Bidder shall confirm in writing that:  (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding or the Auction; and (b) its Qualifying Bid is a good faith *bona fide* offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at the Auction shall be transcribed.

25.    Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or otherwise best bid for the Assets.

26.     The Debtors, subject to the terms of this Order and the Bidding Procedures, shall have the right as they may reasonably determine to be in the best interests of their estates to carry out the Bidding Procedures, including, without limitation, to:  (a) determine which bidders are Qualifying Bidders; (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid is a Baseline Bid; (d) determine which bids are the Successful Bid and Back-Up Bid, each as it relates to the Auction; (e) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (f) adjourn or cancel an Auction and/or the Sale Hearing in open court without further notice (other than the filing of a notice of such adjournment or cancellation on the docket of these chapter 11 cases, which notice may be the hearing agenda in the case of a Sale Hearing) or as provided in this Order and in the Bidding Procedures; (g) modify the Bidding Procedures consistent with their fiduciary duties and bankruptcy law; and (h) withdraw the Motion at any time with or without prejudice.

27.     The Debtors shall have until **12:00 Noon on the business day prior to the Sale Hearing** to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection or Contract Objection.

28.     The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

29.     In the event that there is a conflict between this Order and the Bidding Procedures, this Order shall control and govern.

30.     Prior to mailing the Assumption Notice and the Sale Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any

typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

31.     All persons or entities that participate in the bidding process shall be deemed to have knowingly and voluntarily:  (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution; and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

32.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

33.     The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

34.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

Dated:  _____, 2018
      Wilmington, Delaware

_____
Laurie Selber Silverstein
United States Bankruptcy Judge

**<u>EXHIBIT 1</u>**

**Bidding Procedures**

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

</div>

| | |
|---|---|
| In re: | Chapter 11 |
| **COLOR SPOT HOLDINGS, INC., et al.,**[1] | Case No. 18-11272 (LSS) |
| Debtors. | (Jointly Administered) |

<div align="center">

**BIDDING PROCEDURES**

</div>

On May 29, 2018 (the "**Petition Date**"), Color Spot Holdings, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [_____], 2018, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order [Docket No. _____] (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (collectively, the "**Bidding Procedures**") to be employed by the Debtors in connection with  a sale of substantially all of their assets (collectively, the "**Assets**"), or components thereof, including but not limited to the Debtors' inventory, fee-owned real properties, leases of nonresidential real property, other personal property and intellectual property or  any other transaction to restructure one or more of the Debtors and its or their business.  Any of the foregoing shall be referred to as a "**Transaction**," regardless of whether it takes the form of a sale or restructuring.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT THE DEBTORS' INVESTMENT BANK, RAYMOND JAMES & ASSOCIATES, INC.:**

- **Jay Eastman, 410-525-5176 and Jay.Eastman@RaymondJames.com**

- **Geoff Richards, 212-885-1885 and Geoffrey.Richards@RaymondJames.com**

<div align="center">

**Summary of Important Dates**

</div>

| | |
|---|---|
| **Opening of Data Room** | **June 4, 2018** |
| **Bidding Procedures Hearing** | **June 25, 2018** |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Color Spot Holdings, Inc. (7061); Color Spot Nurseries, Inc. (3266); Hines Growers, Inc. (5946); and Lone Star Growers, Inc. (4748).  The Debtors' principal offices are located at 27368 Via Industria, Suite 201, Temecula, CA 92590.

| Deadline to serve Assumption Notice | June 29, 2018 |
|---|---|
| **Stalking Horse Designation Deadline** | **July 2, 2018** |
| **Bid Deadline** | **July 16, 2018 at 5:00 p.m. (ET)** |
| Deadline to object to Sale (other than with respect to the conduct of the Auction and designation of a Successful Bidder) | July 16, 2018 at 4:00 p.m. (ET) |
| Deadline to object to Assumption Notice | July 16, 2018 at 4:00 p.m. (ET) |
| **Auction commencement** | **July 18, 2018 at 10:00 a.m. (ET)** |
| Deadline to object to conduct of Auction and designation of Successful Bidders, and adequate assurance | July 20, 2018 at 4:00 p.m. (ET) |
| **Sale Hearing** | **July 23, 2018 at 1:30 p.m. (ET)** |

### 1.    Assets to be Sold

The Debtors are offering for sale all of the Assets.  Potential Bidders (as defined below) may bid on all or any number or combination of the Assets.  Potential Bidders may also submit a Restructuring Term Sheet (as defined below) that provides for the reorganization of one or more of the Debtors.

### 2.    Participation Requirements

Any person or entity that wishes to participate in the bidding process for the Assets (each, a "**Potential Bidder**") must first become a "**Qualifying Bidder.**"  To become a Qualifying Bidder (and thus being able to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**")), a Potential Bidder must submit to the Debtors and their advisors:

(a)    documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated Transaction;

(b)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder(s);

(c)    a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the interested party has a bona fide interest in consummating a Transaction; and

(d)       sufficient information, as determined by the Debtors, to allow the Debtors to determine that the interested party (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a Transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion) and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder, pursuant to section 365 of the Bankruptcy Code, in connection with a Transaction.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors, each of the Consultation Parties (as defined below), or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated Transaction.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) any designated Stalking Horse Purchaser shall be considered a Qualifying Bidder, and a Stalking Horse Agreement shall be considered a Qualifying Bid (as defined below); and (ii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

### 3.       **Stalking Horse Designation**

On or before July 2, 2018 (the "**Stalking Horse Deadline**"), the Debtors may, in consultation and with consent of the Consultation Parties, select a party to serve as a "**Stalking Horse Purchaser**" to acquire substantially all of the Debtors' Assets pursuant to a "**Stalking Horse Agreement**," without the need for further notice and hearing; provided, however, that any break-up fee (a "**Break-Up Fee**") shall be limited to an amount no greater than 3% of the cash portion of any Qualifying Bid, any expense reimbursement (an "**Expense Reimbursement**" and together with any associated Break-Up Fee, the "**Bid Protections**") shall be limited to an amount not to exceed $350,000.  If the Debtors designate a Stalking Horse Purchaser and Stalking Horse Agreement, including any Bid Protections, in accordance with the proviso at the end of the prior sentence, they shall file a Stalking Horse Notice in accordance with the Bidding Procedures Order and submit an order approving the same under certification of counsel. The Debtors, however, reserve the right to file a Stalking Horse Notice, on or before the Stalking Horse Deadline, to designate a Stalking Horse Purchaser and Stalking Horse Agreement, including any Bid Protections, that do not meet the foregoing qualifications and seek a hearing before the Court on, or as soon as the Court is available after, July 9, 2018 to consider approval of the same.

### 4.       **Bankruptcy Court Jurisdiction**

Any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bidding Procedures, the respective Transaction proposed by each such party, the Auction (as defined below) and the construction and enforcement of the contemplated Transaction documents of such parties, (b) bring any such action or proceeding in the Court, and (c) be deemed to have consented to the

Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

### 5.    Form of Agreement

As set forth below, Potential Bidders intending to submit bids must include with their bids:

(a)    If the Transaction is a sale, an asset purchase agreement (a "**Purchase Agreement**").  The Purchase Agreement shall be (i) if a Stalking Horse Purchaser has been designated for the applicable Assets, be upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in a Stalking Horse Agreement, if applicable and include a redline marked against the Stalking Horse Agreement, and (ii) otherwise, in the form of the Purchase Agreement include in the Data Room and include a redline marked against the form Purchase Agreement; or

(b)    If the Transaction is for a restructuring, a term sheet that reflects all of the material terms of a proposed restructuring including the consideration to be provided under the proposed restructuring to the Debtors' existing creditors and the sources and uses of any cash needed to fund the restructuring, including bridge financing for the Debtors' operations and administrative expenses from the date of the Auction to the anticipated effective date of the restructuring (a "**Restructuring Term Sheet**").

### 6.    Due Diligence

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to: Raymond James & Associates, Inc., the Debtors' investment bank, care of Jay Eastman (410-525-5176;  Jay.Eastman@RaymondJames.com);  and  Geoff  Richards  (212-885-1885; Geoffrey.Richards@RaymondJames.com).

The due diligence period shall extend through and including the Bid Deadline.  The Debtors may, but shall not be obligated to, in their sole discretion, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Qualifying Bidder.  Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Qualifying Bidders provided that such Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have

no liability with respect to, any information obtained by, or provided to, any Qualifying Bidders in connection with the Bidding Procedures and a contemplated Transaction.

## 7.    **Bid Requirements**

Other than in the case of a bid submitted by the Stalking Horse Purchaser, to be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the following requirements, as determined by the Debtors in consultation with the Consultation Parties (each, a "**Bid Requirement**"):

(a)    be in writing;

(b)    fully disclose the identity of the Qualifying Bidder (and any other party participating in the bid) and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c)    set forth the purchase price to be paid by such Qualifying Bidder or the material terms of a Restructuring Term Sheet;

(d)    if a bid includes a credit bid under section 363(k), evidence of the amount of the claim, the Assets constituting the collateral securing the claim, and evidence of the grant, perfection, priority, and validity of the lien (the "**Secured Claim Documentation**");[2]

(e)    in the case of a proposed purchase of the Assets, not propose payment in any form other than cash (except as otherwise expressly set forth in these Bidding Procedures and the Bidding Procedures Order);

(f)    state the liabilities proposed to be paid or assumed by such Qualifying Bidder or, if in the form of a plan, the treatment of each class of claims or equity interest under the plan;

(g)    specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase the Assets, or a number or combination of the Assets, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse Agreement, as applicable;

(h)    state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the sale of the Assets (as applicable to sales, only);

---

[2]    Parties intending to submit a credit bid are encouraged to provide their Secured Claim Documentation to the Debtors' counsel prior to the Bid Deadline to ensure that their Secured Claim Documentation is validated.

(i)     state that such Qualifying Bidder is financially capable of consummating the Transaction contemplated by the bid and provide written evidence in support thereof (including evidence of bridge financing in the case of a restructuring proposal);

(j)     contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the proposal, including, without limitation, such financial and other information supporting the Qualifying Bidder's (or reorganized Debtors') ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to serve, within one (1) business day after such receipt, such information on any counterparties to any contracts or leases being assumed and assigned (or assumed) in connection with the Transaction that have requested, in writing, such information;

(k)     identify with particularity each and every executory contract and unexpired lease the assumption and assignment of which is a condition to close the contemplated transaction(s);

(l)     specify whether the Qualifying Bidder intends to operate all or a portion of the Debtors' business as a going concern;

(m)    if the Transaction contemplated by the proposal is a sale, a commitment to close the Transaction by August 5, 2018;

(n)     not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

(o)     in the event that there is a Stalking Horse Purchaser, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, (B) any Break-Up Fee, (C) any Expense Reimbursement, and (D) $250,000.

(p)     not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

(q)     contain a written acknowledgement and representation that the Qualifying Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its Qualifying Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with

the Bidding Procedures and the proposed Transaction;

(r)     sets forth (i) a statement or evidence that the Qualifying Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, if applicable, and pay the fees associated with such filings and (ii) any regulatory and third-party approval required for the Qualifying Bidder to close the contemplated transactions, and the time period within which the Qualifying Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Qualifying Bidder's Purchase Agreement, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); _provided_ that a Qualifying Bidder agrees that its legal counsel will coordinate in good faith with Debtors' legal counsel to discuss and explain Qualifying Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable; _provided_, _further_ that the offer contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

(s)     provides for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the "**Back-Up Bid**") after the Successful Bid (as defined below);

(t)     includes written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the subject term sheet;

(u)     provides a good faith cash deposit (the "**Deposit**") in an amount equal to ten percent (10%) of the purchase price provided for in the proposal (or such additional amount as may be determined by the Debtors in their reasonable discretion and in consultation with the Consultation Parties) to be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "**Escrow Agent**") pursuant to the escrow agreement to be provided by the Debtors to the Qualifying Bidders (the "**Escrow Agreement**"); and

(v)     provides for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the modified Purchase Agreement equal to the amount of the Deposit.

       The Debtors reserve the right, in consultation with the Consultation Parties, to negotiate with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

       Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and

(b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

### 8.    Bid Deadline

A Qualifying Bidder, other than any Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Notice Parties so as to be received on or before **July 16, 2018 at 5:00 p.m. (ET)** (the "**Bid Deadline**"); _provided_ that the Debtors may extend the Bid Deadline without further order of the Court, subject to providing notice to the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of these chapter 11 cases indicating the same. **Any party that does not submit a bid by the Bid Deadline (including as extended in accordance with the prior two sentences) will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.**

### 9.    Evaluation of Qualifying Bids

The Debtors will deliver by no later than 9:00 a.m. (ET) on the day following the Bid Deadline, copies of all bids from Qualifying Bidders to each of the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid, and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than 5:00 p.m. (ET) on the day before the commencement of the Auction. In the event that a bid is determined not to be a Qualifying Bid, including with respect to any proposed credit bid amount, the Qualifying Bidder shall be notified by the Debtors and shall have until the commencement of the Auction to modify its bid to increase the purchase price or otherwise improve the terms of the Qualifying Bid for the Debtors and to provide additional Secured Claim Documentation; _provided_ that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to commencing the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best bid for purposes of constituting the opening bid of the Auction (the "**Baseline Bid**" and the Qualifying Bidder submitting the Baseline Bid, the "**Baseline Bidder**"), and shall notify any Stalking Horse Purchaser and all Qualifying Bidders with Qualifying Bids of the Baseline Bid no later than the opening of the Auction.

### 10.    No Qualifying Bids

If no timely Qualifying Bids other than any Stalking Horse Purchaser's Qualifying Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and may request at the Sale Hearing that the Stalking Horse Purchaser (if any) be deemed the Successful Bidder (as defined herein) and that the Court approve the Stalking Horse Agreement (if any) and the transactions contemplated thereunder.

11.    **Right to Credit Bid**

Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates that is not subject to an objection by the commencement of the Auction (a "**Secured Creditor**") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claim within the meaning of section 363(k) of the Bankruptcy Code and to the extent demonstrated by the Secured Claim Documentation; _provided_ that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured.

12.    **Auction**

If the Debtors timely receive one or more Qualifying Bids for any of the Assets (inclusive of any Stalking Horse Purchaser's Qualifying Bid), then the Debtors shall conduct an auction (the "Auction").  Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest or best bid for the Assets, which will be determined by considering, among other things, the following non-binding factors: (a) the terms of the Purchase Agreement or Restructuring Term Sheet requested by each bidder; (b) the extent to which such terms are likely to delay closing of the Sale, the cost to the Debtors and their estates of such modifications or delay, and any incremental financing being offered to accommodate any delay; (c) the total consideration to be received by the Debtors and their estates; (d) the Transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (e) the net benefit to the Debtors' estates, taking into account any Break-Up Fee and any Expense Reimbursement provided for in any applicable Stalking Horse Agreement; (f) the impact on employees, trade creditors and lease and contract counterparties; and (g) any other factors the Debtors may reasonably deem relevant.

The Auction shall be governed by the following procedures:

(a)    the Auction shall commence on **July 18, 2018 at 10:00 a.m. (ET)** (the "**Auction Date**"), at Young Conaway Stargatt & Taylor, LLP, 1000 King Street, Rodney Square, Wilmington, Delaware 19801;

(b)    only a Stalking Horse Purchaser and the other Qualifying Bidders with Qualifying Bids (collectively, the "**Auction Bidders**") shall be entitled to make any subsequent bids at the Auction;

(c)    the Auction Bidders shall appear in person at the Auction, or through a duly authorized representative;

(d)    only the Debtors, the Auction Bidders, the Consultation Parties, and the Debtors' creditors and equity holders, together with the professional advisors to each of the foregoing parties, may attend the Auction; provided that any creditors and equity holders desiring to attend the Auction must provide counsel for the Debtors one (1) business day's written notice of their intent to attend the Auction;

(e)     the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f)     the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction or the Sale;

(g)     bidding shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least the lesser of $500,000 and 1% of the current highest and best bid (or Baseline Bid for the first round) (the "**Bid Increment**"); *provided* that: (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest and best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of, if applicable, (A) any Break-Up Fee and (B) any Expense Reimbursement; (iii) any successive bid made by any Stalking Horse Purchaser shall only be required to equal the sum of the amount of (A) the Baseline Bid or the then-highest and best bid, as applicable, plus (B) the Bid Increment, less (C) the sum of the amount of, if applicable, (X) any Break-Up Fee and (Y) any Expense Reimbursement; and (iv) the Debtors shall retain the right to modify the bid increment requirements at the Auction; *provided*, *further*, that the Debtors, in consultation with the Consultation Parties, reserve the right to modify the Bid Increment during the course of the Auction and shall do so on the record at the Auction;

(h)     the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i)     all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(j)     the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court entered in connection with these chapter 11 cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

(k)     each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) bring any such

action or proceeding in the Court, and (iii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

(l)     Auction Bidders shall have the right to make additional modifications to their respective Purchase Agreements or any Stalking Horse Agreement, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Auction Bidders' respective Purchase Agreements or any Stalking Horse Agreement, as applicable, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

(m)     the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal or any Stalking Horse Agreement, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(n)     upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, and subject to Court approval, the offer or offers for the Assets that is or are the highest or best from among the Qualifying Bids submitted at the Auction, which may be a Stalking Horse Agreement (the "**Successful Bid**"). In making this decision, the Debtors shall consider, in consultation with the Consultation Parties, the amount of the purchase price, the likelihood of the bidder's ability to close a transaction and the timing thereof, the nature and impact of any variances from the form Purchase Agreement requested by each bidder, and the net benefit to the Debtors' estates. The bidder submitting such Successful Bid, which may be the Stalking Horse Purchaser, shall become the "**Successful Bidder**," and shall have such rights and responsibilities of the purchaser as set forth in the subject Purchase Agreement, as applicable. The Debtors may, in their sole discretion, designate Back-Up Bids (and the corresponding Back-Up Bidders) to purchase the Assets in the event that the Successful Bidder does not close the Sale; and

(o)     prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

**THE SUCCESSFUL BID AND ANY BACK-UP BIDS SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE SUCCESSFUL BIDDER AND THE BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE HAS CLOSED. EACH QUALIFYING BID THAT IS NOT THE SUCCESSFUL BID OR BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.   NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, IF THE SUCCESSFUL BID IS IN THE FORM OF A RESTRUCTURING TERM SHEET, ANY BACK-UP BID SHALL REMAIN IRREVOCABLE AND BINDING ON THE BACK-UP BIDDER UNTIL TWO (2) BUSINESS DAY AFTER THE ENTRY OF AN ORDER CONFIRMING THE SUCCESSFUL BID IN THE FORM OF A RESTRUCTURING TERM SHEET AS THE SUCCESSFUL BID (OR SUCH FURTHER PERIOD SET FORTH IN ANY ORDER ENTERED AT THE SALE HEARING).**

13.     **Sale Hearing**

The Successful Bid and any Back-Up Bid (or if no Qualifying Bid other than that of any Stalking Horse Purchaser is received, then the Stalking Horse Agreement) will be subject to approval by the Court.  The hearing to approve such Successful Bid and any Back-Up Bid (the "**Sale Hearing**") shall take place, subject to the Court's availability, on **July 23, 2018** at _____**(ET)**.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a hearing agenda or notice on the docket of the Debtors' chapter 11 cases.  **For the avoidance of doubt, by no later than the time of announcement of the Baseline Bid for the Auction, the Debtors may determine, in consultation with the Consultation Parties, to withdraw the Assets or any subset thereof, from the Auction and sale process, and adjourn the Sale Hearing with respect to these Assets on the terms set forth herein.**

At the Sale Hearing, the Debtors will seek entry of an order that, among other things: (i) authorizes and approves the Sale to the Successful Bidder (and, if applicable the Back-Up Bidder), pursuant to the terms and conditions set forth in the applicable Stalking Horse Agreement or Purchase Agreement executed by the Successful Bidder (and, if applicable the Back-Up Bidder), and that the Assets being transferred in such transaction shall be transferred free and clear of all liens claims and Encumbrances pursuant to section 363(f) of the Bankruptcy Code; (ii) unless otherwise ordered by the Court, directing that all Encumbrances on the Assets that are sold shall attach to the cash proceeds generated from the sale of such Assets in the same order of priority as they existed prior to the consummation of such sale; (iii) finding that the Stalking Horse Purchaser or Successful Bidder, as applicable, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; and (iv) as appropriate, exempting the Sale(s) and conveyance(s) of the Assets from any transfer tax, stamp tax or similar tax, or deposit under any applicable bulk sales statute.  Notwithstanding anything in the foregoing to the contrary, if the Successful Bid is in the form of a Restructuring Term Sheet, the Debtors will seek authorization

to proceed with the Transaction contemplated by such Restructuring Term Sheet, including all other relief necessary to proceed with implementation of such a Transaction.

### 14. <u>**Back-Up Bidder**</u>

Notwithstanding any of the foregoing, in the event that the Successful Bidder fails to close the Sale by August 5, 2018 (or such date as may be extended by the Debtors, in consultation with the Consultation Parties, and with the agreement of the Back-Up Bidder), the Back-Up Bid will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtors will be authorized, but not directed, to close the Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties, as soon as practicable, but not later than August 15, 2018.

### 15. <u>**Return of Deposits**</u>

All Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder no later than three (3) business days following the conclusion of the Sale Hearing.  The deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale.  If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Purchase Agreement or any Stalking Horse Agreement, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

### 16. <u>**Notice and Consultation Parties**</u>

(a)    The term "<u>Notice Parties</u>" as used in these Bidding Procedures shall mean: (i) the Debtors (Attn: Paul Russo, Chief Executive Officer; paulr@colorspot.com); (ii) counsel to the Debtors,  Young Conaway Stargatt & Taylor, LLP (Attn: M. Blake Cleary, Esq., Sean T. Greecher, Esq., and Ryan M., Bartley, Esq; mbcleary@ycst.com, sgreecher@ycst.com, and rbartley@ycst.com); and (iii) investment banking advisor to the Debtors,  Raymond James & Associates, Inc. (Attn: Jay Eastman and Geoff Richards, Jay.Eastman@RaymondJames.com and Geoffrey.Richards@RaymondJames.com).

(b)    The term "<u>Consultation Parties</u>" as used in these Bidding Procedures shall mean: (i) counsel to the official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "<u>Creditors' Committee</u>");  (ii) counsel to Wells Fargo Bank, N.A.; and (iii) counsel to Capital Farm Credit, FLCA.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

01:23251515.5

13

If a member of the Creditors' Committee submits a Qualifying Bid, the Creditors' Committee will continue to have consultation rights as set forth in these Bidding Procedures; *provided* that the Creditors' Committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets and shall not provide any information regarding the sale of the Assets to such member.

In the event that any Consultation Party (other than the Creditors' Committee) or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged and released without further action; *provided* that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

### 17.    Reservation of Rights

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

# **EXHIBIT 2**

## **Assumption Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **COLOR SPOT HOLDINGS, INC., et al.**[1] | Case No. 18-_____ (___) |
| Debtors. | Jointly Administered |
| | **RE: Docket No. ___** |

## NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT
## AND CURE AMOUNTS WITH RESPECT TO EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**"), on May 29, 2018, in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").  The Debtors are seeking to assume and assign certain of their executory contracts and unexpired leases in connection with the sale (the "**Sale**") of all or substantially all of their assets (collectively, the "**Assets**"), or some subset(s) thereof.  The Debtors are seeking Court approval of such Sale and assumptions and assignments pursuant to a motion, dated June 4, 2018 [Docket No. *] (the "**Motion**").

The Court has entered an order (the "**Bidding Procedures Order**")[2] approving certain Bidding Procedures that will govern the sale of the Debtors' Assets to the highest or best bidder and certain Assumption and Assignment Procedures governing the transfer of  unexpired leases and executory contracts to a Successful Bidder.  Copies of the Motion and the Bidding Procedures Order are available for download at http://dm.epiq11.com/ColorSpot (the "**Case Website**").

[The Debtors are proposing to sell the Assets to [_____] (the "**Stalking Horse Purchaser**") pursuant to the terms of the Stalking Horse Agreement, which was filed with the Court on _____, 2018 [Docket No. *], subject to higher or otherwise better offers submitted under the Bidding and Auction Process.]

**You are receiving this Notice because you may be a party to an unexpired lease or an executory contract that is potentially to be assumed and assigned (collectively, the "Contracts"), in connection with such Sale.  A list of the Contracts is attached hereto as Exhibit A.**

The Debtors have determined the current amounts owing (the "**Cure Amounts**") under each Contract and have listed the applicable Cure Amounts on Exhibit A attached hereto.  The Cure Amounts

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Color Spot Holdings, Inc. (7061); Color Spot Nurseries, Inc. (3266); Hines Growers, Inc. (5946); and Lone Star Growers, Inc. (4748).  The Debtors' principal offices are located at 27368 Via Industria, Suite 201, Temecula, CA 92590.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

are the only amounts proposed to be paid upon any assumption and assignment of the Contracts, in full satisfaction of all amounts outstanding under the Contracts.

To the extent that a Counterparty to a Contract objects to (i) the assumption and assignment of such party's Contract, (ii) the applicable Cure Amount, or (iii) the provision of adequate assurance of future performance, the Counterparty must file and serve an objection (a "Contract Objection").  Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, on or before 4:00 p.m. (ET) on July 16, 2018 (the "Contract Objection Deadline"); (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.  The "Objection Notice Parties" are as follows: (i) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: M. Blake Cleary, Sean T. Greecher, and Ryan M. Bartley); (ii) proposed counsel to any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases; (iii) counsel to Wells Fargo Bank, N.A.; (iv) counsel to Capital Farm Credit, FLCA; (v) counsel to Black Diamond Commercial Finance, L.L.C.; (vi) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane M. Leamy); and (vii) counsel to the Stalking Horse Purchaser[, if any].

If no objection is timely received with respect to Cure Amount, (i) a non-Debtor party to a Contract shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Contract, (ii) the Cure Amount set forth on Exhibit A attached hereto shall be controlling, notwithstanding anything to the contrary in any Contract, or any other document, and the non-Debtor party to a Contract shall be deemed to have consented to the Cure Amount, and (iii) the non-Debtor party to a Contract shall be forever barred and estopped from asserting any other claims related to such Contract against the Debtors or the applicable transferee, or the property of any of them.

If no objection is received by the Contract Objection Deadline to any Stalking Horse Bidder's adequate assurance of future performance with respect to a Contract, a non-Debtor party to such Contract shall be deemed to have consented to the assumption, assignment, and/or transfer of the applicable Contract to the applicable Stalking Horse Bidder, and shall be forever barred and estopped from asserting or claiming that any conditions to such assumption, assignment, and/or transfer must be satisfied under such applicable Contract or that any related right or benefit under such applicable Contract cannot or will not be available to the applicable Stalking Horse Bidder.

Subject to the terms of the Bidding Procedures Order, an auction (the "Auction") for the Assets, including the Contracts, will be conducted on July 18, 2018 at 10:00 a.m. (ET) at the offices of Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801.  As soon as reasonably practicable after the Auction, the Debtors will file and serve a notice that identifies the Successful Bidder for the Assets, including any Contracts, and will post that Notice on the Case Website.  If the Successful Bidder is not a Stalking Horse Bidder, then the deadline to object to adequate assurance of future performance with respect to such Successful Bidder will be extended to two (2) hours prior to the commencement of the Sale Hearing; provided that the deadline to object to the Cure Amounts with respect to such Contracts, and to otherwise object to the

assumption and assignment of such Contracts, shall not be extended.

The Debtors will seek to assume and assign the Contracts that have been selected by a Successful Bidder (collectively, the "Selected Assumed Contracts") at a hearing before the Honorable Judge Laurie Selber Silverstein, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Sixth (6th) Floor, Courtroom #2, Wilmington, Delaware 19801 (a "Sale Hearing") on July 23, 2018 at 1:30 p.m. (ET), or such other date as determined by the Debtors in accordance with the terms of the Bidding Procedures Order. To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be determined by the Debtors or fixed by the Court; *provided, however*, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assumed Contract may be assumed by the Debtors and assigned to the Successful Bidder, provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the Debtors or any Successful Bidder, pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

Dated:    June [__], 2018
         Wilmington, Delaware

<div style="margin-left:40%">

M. Blake Cleary (No. 3614)
Sean T. Greecher (No. 4484)
Jaime Luton Chapman (No. 4936)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

</div>

**Exhibit A to Assumption Notice**

01:23175315.5

**EXHIBIT 3**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **COLOR SPOT HOLDINGS, INC., et al.**[1] | Case No. 18-11272 (LSS) |
| Debtors. | Jointly Administered |
| | **RE: Docket No. ___** |

## NOTICE OF ENTERED BIDDING PROCEDURES ORDER AND PROPOSED SALE

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), on May 29, 2018 (the "**Petition Date**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). The Debtors are seeking to sell (the "**Sale**") all or substantially all of their assets (collectively, the "**Assets**"), or subset(s) thereof, free and clear of all liens, claims, encumbrances, and other interests.  [The Debtors are proposing to sell the Assets to [_____] (the "**Stalking Horse Purchaser**") pursuant to the terms of the Stalking Horse Agreement, which was filed with the Court on _____, 2018 [Docket No. *], subject to higher or otherwise better offers submitted under the Bidding and Auction Process.]

      **PLEASE TAKE FURTHER NOTICE** that by order dated [_____], 2018 [Docket No. *] (the "**Bidding Procedures Order**"),[2] the Bankruptcy Court approved certain "**Bidding Procedures**" that govern the Sale.  All interested parties should carefully read the Bidding Procedures Order and the Bidding Procedures.  Copies of the Bidding Procedures Order and the Bidding Procedures are available upon request to the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions LLC, and are available for download at http://dm.epiq11.com/ColorSpot.  A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale.  **Any interested bidder should contact the Debtors' investment banking advisors, Raymond James Financial, Inc. by contacting: Jay Eastman at 410-525-5176 and Jay.Eastman@RaymondJames.com, and Geoff Richards at 212-885-1885 and Geoffrey.Richards@RaymondJames.com.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Color Spot Holdings, Inc. (7061); Color Spot Nurseries, Inc. (3266); Hines Growers, Inc. (5946); and Lone Star Growers, Inc. (4748).  The Debtors' principal offices are located at 27368 Via Industria, Suite 201, Temecula, CA 92590.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE OF THE FOLLOWING INFORMATION AND IMPORTANT DEADLINES IN CONNECTION WITH THE SALE, WHICH DATES AND DEADLINES SUPERSEDE ANY DATES AND DEADLINES SET FORTH IN THE MOTION [DOCKET NO. _____] PREVIOUSLY FILED AND SERVED BY THE DEBTORS.**

- The deadline to submit a bid for any Assets is **July 16, 2018 at 5:00 p.m. (ET)**.

- Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on July 16, 2018** (the "**Sale Objection Deadline**"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Objection Notice Parties. The "**Objection Notice Parties**" are as follows: (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: M. Blake Cleary, Sean T. Greecher, and Ryan M. Bartley); (ii) proposed counsel to any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases; (iii) counsel to Wells Fargo Bank, N.A.; (iv) counsel to Capital Farm Credit, FLCA; (v) counsel to Black Diamond Commercial Finance, L.L.C.; (vi) the Office of the United States Trustee for the District of Delaware, 855 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane M. Leamy); and (vii) counsel to the Stalking Horse Purchaser, if any.

- An auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on **July 18, 2018 at 10:00 a.m. (ET)**, at the offices of at Young Conaway Stargatt & Taylor, LLP, 1000 King Street, Rodney Square, Wilmington, Delaware 19801.

- Unless adjourned in accordance with the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") to consider the Sale on **July 23, 2018 at 1:30 p.m. (ET)**, in the event the Successful Bid contemplates a going concern sale.

**PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE ENTERED BIDDING PROCEDURES ORDER, THE OBJECTING PARTY SHALL BE BARRED FROM OBJECTING TO THE SALE AND SHALL NOT BE HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

Dated:   June [__], 2018
         Wilmington, Delaware

_____
M. Blake Cleary (No. 3614)
Sean T. Greecher (No. 4484)
Jaime Luton Chapman (No. 4936)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

3