# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| COLOR SPOT HOLDINGS, INC., *et al.*,[1] | ) ) ) | Case No. 18-11272 (LSS) |
| Debtors. | ) ) ) | Jointly Administered |
| | ) | Related D.I. No.: 64, 141 |

**OBJECTION OF MONROVIA NURSERY COMPANY TO
(1) DEBTORS' MOTION FOR ENTRY OF (A) AN ORDER (I) SCHEDULING A HEARING ON THE APPROVAL OF THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF; AND (B) AN ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF, AND TO (2) NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT AND CURE AMOUNTS WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS**

Monrovia Nursery Company ("Monrovia"), by and through undersigned counsel, hereby files this Objection to the (1) *Debtors' Motion for Entry of (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, and the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof; and (III) Granting Related Relief, and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Color Spot Holdings, Inc. (7061); Color Spot Nurseries, Inc. (3266); Hines Growers, Inc. (5946); and Lone Star Growers, Inc. (4748). The Debtors' principal offices are located at 27368 Via Industria, Suite 201, Temecula, CA 92590.

*(B) an Order (I) Approving the Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors Assets Free and Clear of All Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Dkt. No. 64] (the "Sale Motion") and (2) *Notice of Possible Assumption and Assignment with Respect to Executory Contracts and Unexpired Leases of the Debtors* [Dkt. No. 141] (the "Cure Notice"), and in support thereof states as follows:

## BACKGROUND

A.     The License Agreement

1.     Monrovia is a wholesale distributor of high quality plants and garden products, with its headquarters in Azusa, California.

2.     Monrovia is the owner of or has the rights to license the trademark Monrovia®, which has been registered in the United States Trademark Office (U.S. Federal Trademark Registration Number: 2,176,948).

3.     Monrovia is a party to that certain License Agreement with Debtor Color Spot Holdings, Inc. ("Color Spot") dated September 1, 2015 ("License Agreement") in which Monrovia granted Color Spot a non-exclusive and non-transferable license ("License") to market and sell certain finished plants utilizing the Monrovia® trademark and to utilize Monrovia's methods and systems for marketing, selling and distributing the Monrovia plants in exchange for a royalty payment.  A true and correct copy of the License Agreement is attached hereto as Exhibit A.

4.     Under the License Agreement, Monrovia retains all rights in and to the Monrovia® trademark and any of its other proprietary rights.  *See* Exhibit A, Sections 1.c.

5.     Under the License Agreement, Color Spot is authorized only to sell Approved Plants (as defined therein) utilizing the Monrovia® trademark exclusively to Lowe's Companies,

Inc. ("Lowe's") and does not have the right to sell to any other third party unless otherwise agreed in writing by Monrovia. *See* Exhibit A, Sections 1.a, 1.b, 7.a.

6. Under the License Agreement, Color Spot does not have the right to utilize the Monrovia® trademark in any manner other than as specifically provided in the License Agreement. *See* Exhibit A, Section 1.b.

7. As required by the License Agreement, the Debtors have agreed to preserve a certain quality for the plants sold to Lowe's as well as certain price points. *See* Exhibit A, Sections 7.c, 7.e.

8. The License Agreement requires Color Spot to use Monrovia® branded tags, info labels, stakes and other labeling and/or marketing materials purchased from Monrovia-approved suppliers. *See* Exhibit A, Section 6.a.

9. The License Agreement further provides that Color Spot shall sell and distribute all Approved Plants (as defined therein) utilizing branded Monrovia® containers purchased from Monrovia-approved suppliers. *See* Exhibit A, Section 6.b.

10. Under the License Agreement, Color Spot may not assign the License Agreement and its rights thereunder to a third party and may not sublicense the Monrovia brand in any form without Monrovia's prior written approval. *See* Exhibit A, Sections 7, 15.

B.     The Bankruptcy Case

11. On May 29, 2018 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 cases are being jointly administered under the case of Color Spot Holdings, Inc., styled as Case No. 18-11272 (LSS).

12. On June 4, 2018, the Debtors filed the Sale Motion [D.I. No. 64] seeking, *inter alia*, approval of the sale of all or substantially all of their assets, or a subset thereof, free and clear of all liens, claims, encumbrances and other interests and authorizing the assumption and assignment of certain executory contracts and unexpired leases in the connection therewith.

13. On June 25, 2018, the Court entered the Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances, and the Assumption and Assignment of Certain Executory Contracts, and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof; and (III) Granting Related Relief [D.I. No. 134].

14. On June 27, 2018, the Debtors filed the Cure Notice [Dkt. No. 141]. Exhibit A to the Cure Notice lists the License Agreement and a proposed cure amount owed to Monrovia of $70,686.35.

15. As of the date of the filing of this Objection, the Debtors owe Monrovia pre-petition royalties in the amount of $108,992 and post-petition royalties in the amount of $25,812 under the License Agreement. Attached hereto as Exhibit B is a Royalty Sales Report for the period of January1, 2018 through June 30, 2018.

**OBJECTION**

A. <u>Objection to Assumption and Assignment of License Agreement</u>

16. Section 365(c)(1) of the Bankruptcy Code provides that a debtor-in-possession may not assume or assign any executory contract, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if:

> A. applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an

entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

B. such party does not consent to such assumption or assignment. 11 U.S.C. §365(c)(1).[2]

17. Federal trademark law provides that "a licensor who grants a non-exclusive license for the use of its trademark is entitled to certain protections, including restrictions on assignment." *In re Rupari Holding Corp.*, 573 B.R. 111, 117 (Bankr. D. Del. 2017) *citing Wellington Vision, Inc. v. Pearle Vision, Inc. (In re Wellington Vision, Inc.)*, 364 B.R. 129, 134 (S.D. Fla. 2007) (citing the Lanham Act, 15 U.S.C. § 1051 *et seq.*); *In re XMH Corp.*, 647 F.3d 690, 695 (7th Cir. 2011) (noting that the parties did not discuss whether applicable trademark law was state or federal, but deciding that it did not matter because "the universal rule is that trademark licenses are not assignable in the absence of a clause expressly authorizing assignment.").

18. The Delaware Bankruptcy Court has recognized that the "substantial weight of authority holds that under federal trademark law, trademark licenses are not assignable in the absence of some express authorization from the licensor, such as a clause in the license agreement itself." *In re Trump Entertainment Resorts, Inc.*, 526 B.R. 116, 123 (Bankr. D. Del. 2015); *In re Rupari Holding Corp.*, 573 B.R. 111, 117 (Bankr. D. Del. 2017). "It is well settled that a non-exclusive licensee of a patent has only a personal and not a property interest in the patent and that this personal right cannot be assigned unless the patent owner authorizes the assignment or the license itself permits assignment." *Everex Systems, Inc. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89 F.3d 673, 677-78 (9th Cir. 1996) c*iting Gilson v. Republic of Ireland*, 787 F.2d 655, 658 (D.C. Cir.

---

[2] Although Section 365(f)(1) of the Bankruptcy Code grants a debtor the right to assign an executory contract regardless of a contract provision or applicable law prohibiting, restricting or conditioning assignment, Section 365(f)(1) is expressly subject to Section 365(c). *In re Trump Entertainment Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) (citing *Rieser v. The Dayton Country Club Co. (In re Magness)*, 972 F.2d 689, 698 (6th Cir. 1992) ("section 365(c), the recognized exception to 365(f), appears at first to resuscitate in full the very anti-assignment 'applicable law' which 365(f) nullifies"); *In re ANC Rental Corp.*, 277 B.R. 226, 235 (Bankr. D. Del. 2002)).

1986) (Friedman, J.); *See also Perlman v. Catapult Entertainment, Inc. (In re Catapult Entertainment, Inc.)*, 165 F.3d 747 (9th Cir. 1999). Other courts have consistently held that licenses for intellectual property are personal and cannot be assigned. *In re Golden Books Family Entertainment, Inc. et al.*, 269 B.R. 300, 308-09 (Bankr. Del. 2001), (licenses for copyrighted cartoon characters could not be assigned); *In re Patient Education Media, Inc.*, 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997), (non-exclusive license for copyrighted materials could not be assigned absent consent of licensor); *In re Alltech Plastics, Inc.*, 71 B.R. 686, 889 (Bankr. W.D.Tenn. 1987), (rights and duties under patent licenses are personal and non-delegable and non-assignable).

19.    In *Trump Entertainment Resorts, Inc.*, 526 B.R. 116, 123 (Bankr. D. Del. 2015), the Court explained the reasoning non-bankruptcy law bans assignment of such licenses, as follows:

> "The purpose of a trademark, after all, is to identify a good or service to the consumer, and identity implies consistency and a correlative duty to make sure that the good or service really is of consistent quality, i.e., really is the same good or service."

*In re Trump Entm't*, 526 B.R. at 124 *citing In re XMH Corp.,* 647 F.3d 690, 695 (7th Cir.2011); 4 *McCarthy on Trademarks* § 25:33 (4th ed. 2010) ("Since the licensor-trademark owner has the duty to control the quality of goods sold under its mark, it must have the right to pass upon the abilities of new potential licensees."). In other words, federal trademark law generally bans assignment of trademark licenses absent the licensor's consent because, in order to ensure that all products bearing its trademark are of uniform quality, the identity of the licensee is crucially important to the licensor. *Id*.; see *also Rupari Holding*, 573 B.R. at 117.

20.    Monrovia objects to the proposed assumption and assignment of the License Agreement because it is not assignable under federal trademark law and other applicable law. Under the terms of the License Agreement, the License grants Color Spot a non-exclusive and

non-transferable license to market and sell certain finished plants utilizing the Monrovia® trademark and brand exclusively for retail sale to Lowe's.  *See* Exhibit A, Section 1(a).  Color Spot can only sell the plants to Lowe's and to no other retailer.  *See* Exhibit A, Sections 1.a and 7.a.  Color Spot is required under the License Agreement to preserve a certain quality for the plants sold to Lowe's as well as certain price points.  *See* Exhibit A, Sections 7.c and 7.e.  The License Agreement states specifically that Color Spot cannot assign the License Agreement or its rights thereunder, and that Color Spot cannot sublicense the Monrovia brand in any form without prior approval of Monrovia.  *See* Exhibit A, Section 7.f, 15.

21. Monrovia does not consent to the assumption and assignment of the License Agreement.  Monrovia has spent valuable resources developing and promoting the Monrovia® trademark.  As a result, Monrovia is very particular about who can use its trademark in order to ensure that the quality and the pricing of the products are maintained.  The License Agreement itself contains language requiring Color Spot to maintain certain quality and pricing standards.  In addition, the License Agreement authorizes any sale of the Monrovia® product to only one retail store, Lowe's.  The License Agreement is personal to Color Spot who was chosen specifically due to its ability to maintain the quality and pricing standards which are integral to maintain the quality of the brand.

22. Based on the foregoing, the Debtors are prohibited from assuming and assigning the License Agreement pursuant to Section 365(c)(1) of the Bankruptcy Code.

B.  <u>Objection to Sale of Product Bearing Monrovia® Trademark</u>

23. Monrovia objects to the sale of all inventory or other product with or bearing the Monrovia® trademark, including but not limited to branded containers, tags, info labels, stakes and labeling and/or marketing materials, to general purchasers free and clear of the restrictions in

the License Agreement because such a sale of the Monrovia branded product does not comply with the requirements for a sale under the Bankruptcy Code and violates the License Agreement.

24. Under Section 363(f) of the Bankruptcy Code, a debtor is permitted to sell property free and clear of any interest in the property only if the debtor meets one of the five requirements listed in the statute, as follows:

> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

25. In this case, the debtor cannot satisfy section 363(f)(1) because applicable non-bankruptcy law prohibits the sale of product bearing the Monrovia® trademark free and clear of such interest. The License Agreement only permits the debtors to sell the Monrovia branded product to Lowe's. Under applicable case law, a licensee cannot exceed the scope of the license. *See In re Valley Media, Inc.*, 279 B.R. 105, 139-140 (Bankr. Del. 2002) (sale of product by debtor is confined to the scope of the permission granted in the license agreement). As the Fifth Circuit noted, "with regard to licenses, the prevailing view is that one who exceeds the scope of the license is potentially liable not just for breach of the license agreement but also for trademark infringement." *In re Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F. 3d 356, 364 (5th Cir. 2004). Under the License Agreement, the Debtors can only sell the Monrovia® branded product to one retailer, namely, Lowe's. Any other sales at liquidation or otherwise are simply

unauthorized, are outside the scope of the License Agreement and would constitute infringement of the Monrovia trademark.

26. The same reasoning applies to the standard under section 363(f)(5) because Monrovia cannot be compelled to accept a monetary satisfaction of its interest in a legal or equitable proceeding. Since sale to general third parties would violate the License Agreement and applicable law, Monrovia cannot be compelled to accept a monetary satisfaction of its interest.

27. Moreover, Monrovia does not and cannot consent to the sale of its product to general buyers as provided under Section 363(f)(2) of the Bankruptcy Code because of potential harm and potential loss of its trademark under the Lanham Act (15 U.S.C. §1051 et seq.). In addition to the violations of trademark law and the infringement actions which would result if the product was sold outside the scope of the License Agreement, Monrovia has an affirmative duty under federal law to take reasonable measures to "detect and prevent misleading use of his mark by his licensees or suffer cancellation of his federal registration." *See Franchised Stores of New York, Inc. v. Winter*, 394 F.2d 664, 668-669 (2d Cir. 1968). In addition, to the extent that the licensor fails to exercise quality control over a licensee, a court may find that the trademark owner has abandoned the trademark. *The National Grange of the Order of Patrons of Husbandry v. California State Grange*, 115 F.Supp.3d 1171 (E.D.Ca. 2015). Due to the potential loss of the trademark, Monrovia cannot and does not consent to the sale of the Monrovia® branded items outside the scope of the License Agreement.

28. Finally, Monrovia is the registered owner and holds the right to license the trademark Monrovia® and no bona fide dispute exists as to its interest in the trademark.

29. Thus, the Debtors cannot satisfy any of the factors under Section 363(f) of the Bankruptcy Code to authorize a sale of any inventory or products bearing the Monrovia® trademark to a third-party purchaser.

30. Any sale of inventory or product branded with the Monrovia® trademark would violate the License Agreement and applicable non-bankruptcy law. Accordingly, the Motion should be denied and the Debtors prohibited from selling such inventory and product to provide adequate protection to Monrovia and its rights in the Monrovia® trademark pursuant to Section 363(e) of the Bankruptcy Code.

C. <u>Objection to Proposed Cure Amount</u>

31. Section 365(b)(1) of the Bankruptcy Code provides, in pertinent part, that:

> "If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of contract or lease, the trustee –
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default…"
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

32. The Debtors currently owe Monrovia for unpaid royalties in the aggregate amount of no less than $134,804 under the License Agreement for the period of January through June 2018. *See* Exhibit B. Under the clear and express provisions of §365(b)(1), the Debtors cannot assume the License Agreement without curing all existing defaults under the License Agreement.

33. Monrovia objects to the assumption and assignment of the License Agreement to the extent that the Debtors have failed to provide adequate assurance of future performance pursuant to section 365(b)(1)(C).

34. Monrovia hereby reserves any and all rights that it may have with respect to the License Agreement or otherwise under the Bankruptcy Code or other applicable law, including but not limited to the right to amend and/or supplement its cure claim asserted herein.

WHEREFORE, Monrovia Nursery Company prays that the Court sustain its Objection and for such other and further relief as may be just in this case.

Dated: July 5, 2018

MACELREE HARVEY, LTD.

/s/ *Tiffany M. Shrenk*
Tiffany M. Shrenk, Esquire (No. 5526)
5721 Kennett Pike
Centreville, DE 19807
Telephone:  (302) 654-4454
Facsimile:  (302) 654-4954
Email:  tshrenk@macelree.com

And

Ashley B. Stitzer (No. 3891)
17 West Miner Street
West Chester, PA 19382
Telephone:  (610) 840-0243
Facsimile:  610-430-8245
Email:  astitzer@macelree.com

*Counsel for Monrovia Nursery Company*