## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **COLOR SPOT HOLDINGS, INC., et al.**[1] | Case No. 18-11272 (LSS) |
| Debtors. | Jointly Administered |
| | **RE: Docket Nos. 64 & 134** |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND
AUTHORIZING SALE OF CERTAIN ASSETS OF DEBTORS' OUTSIDE THE
ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING  THE SALE OF ASSETS
FREE AND CLEAR OF ALL ENCUMBRANCES; (III) AUTHORIZING
THE ASSUMPTION, SALE AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (the "**Debtors**") for an order, under sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006 and Local Rules 2002-1 and 6004-1, authorizing and approving, among other things, (a) the proposed sale of substantially all of the Debtors' assets (defined as the "**Acquired Assets**" in the Purchase Agreement) free and clear of all Encumbrances[3] other than the Assumed Liabilities and Permitted Exceptions, (b) entry into an

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Color Spot Holdings, Inc. (7061); Color Spot Nurseries, Inc. (3266); Hines Growers, Inc. (5946); and Lone Star Growers, Inc. (4748).  The Debtors' principal offices are located at 27368 Via Industria, Suite 201, Temecula, CA 92590.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or in the Purchase Agreement (as defined herein), or the Bidding Procedures Order (as defined herein), as applicable.  If there is a conflict between terms defined in the Motion and the Purchase Agreement, the Purchase Agreement shall control.

[3] "**Encumbrances**" is defined in the Purchase Agreement to mean any lien, encumbrance, claim (as defined in Section 101(5) of the Bankruptcy Code), right, demand, charge, mortgage, deed of trust, option, pledge, security interest or similar interest, title defect, hypothecation, easement, right of way, restrictive covenant,

Asset Purchase Agreement, dated July 20, 2018, a copy of which is attached hereto as **Exhibit 1** (the "**Purchase Agreement**") with Wells Fargo Bank, National Association ("**Wells Fargo**", and collectively with all designee Buyers under the Purchase Agreement, the "**Buyer**"), (c) assumption, as applicable, and assignment of the Assumed Contracts (defined below) to the Buyer, and (d) other related relief; the Court having entered an order approving the bid procedures (the "**Bidding Procedures**") and granting related relief on June 25, 2018 [Docket No. 134] (the "**Bidding Procedures Order**"); an Auction having been conducted pursuant to the terms of the Bidding Procedures Order on July 19-20, 2018; the Debtors having identified the bid by the Buyer made at the Auction as the highest or otherwise best bid for the Acquired Assets; the Court having conducted a hearing on the Motion commencing on July 20, 2018 and continuing on July 25, 2018 (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; the Court having (a) reviewed and considered the Motion, all relief related thereto, the objections thereto and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing and (b) found that, after the marketing process conducted in accordance with the Bidding Procedures Order, the Buyer has submitted the highest or otherwise best bid for the Acquired Assets; adequate and sufficient notice of the Bidding Procedures, the Purchase Agreement, and all transactions contemplated thereunder and in this Sale Order (as defined below) having been given in the manner directed by the Court in the Bidding Procedures Order; reasonable and adequate notice of the Motion having been provided to all persons required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; jurisdiction existing for the Court to consider the Motion; and after due deliberation on the foregoing and upon the arguments and statements in support of the Motion

---

encroachment, right of first refusal, preemptive right, judgment, conditional sale or other title retention agreement, and all other impositions, imperfections, defects, limitations, or restrictions of any nature or kind whatsoever.

4831-7340-2734.v5

presented at the hearing before the Court, it appears that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest, that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein, and that good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS (the "**Sale Order**"):[4]

A.    **Jurisdiction and Venue**.  This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1.

C.    **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

D.    **Notice**.  Actual written notice of the Sale, the Motion, the time and place of the proposed Auction, and the time and place of the Sale Hearing (the "**Sale Notice**") was provided to the following parties: (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to Wells Fargo Bank, N.A.; (3) counsel to Capital Farm Credit, FLCA; (4) counsel to Black Diamond Commercial Finance, L.L.C.; (5) all parties known by the Debtors to assert a lien on any of the Assets; (6) the Office of the United States Attorney for the District of Delaware; (7) the Office of the Attorney General in each state in which the Debtors operate or sell their goods; (8) the Office of the Secretary of State in each state in which the Debtors operate

---

[4]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

or are organized; (9) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (10) all environmental authorities having jurisdiction over any of the Assets, including the Environmental Protection Agency; (11) all of the Debtors' other known creditors and equity security holders, including the Counterparties; (12) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the service date; and (13) counsel to the Official Committee of Unsecured Creditors (the "**Committee**"). [*See* Docket No. 145.] In addition, the Debtors caused their investment banker, Raymond James & Associates, Inc., to distribute by email on a confidential basis the Bidding Procedures and the Sale Notice to all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the Acquired Assets within the twelve (12) months prior to the Petition Date. The Sale Notice and the Bidding Procedures Order were also posted on the website of the Debtors' claims and noticing agent.

E.      The Sale Notice was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, the Auction and the Sale Hearing.

F.      As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Auction, Purchase Agreement, Sale Hearing, and transactions contemplated thereby, has been provided in accordance with the Bidding Procedures Order, sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 6006. The Debtors have complied with all obligations to provide notice of the Motion as required by the Bidding Procedures Order. The notice described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Auction, Purchase Agreement, or Sale Hearing is or shall be required. The disclosures made by the Debtors concerning the Motion, Auction, Purchase Agreement, and Sale Hearing were good, complete, and adequate.

G.      In accordance with the Bidding Procedures Order, the Debtors served notices (including amending and supplementing notices) of the potential assumption and assignment [*see* Docket Nos. 141, 206, 207, 218 & 219] (collectively, the "**Assumption Notice**") upon each non-

debtor counterparty to the contracts set forth on **Exhibit 2** (the contracts referenced in **Exhibit 2** being referred to herein as the "**Proposed Assumed Contracts**"). The Assumption Notice identified the sole and exclusive amounts that the Debtors proposed to pay in connection with the assumption and assignment of the Proposed Assumed Contracts (the foregoing amounts as stated in the Assumption Notice, as modified herein, collectively referred to as the "**Cure Amounts**"). The Assumption Notice stated that the affected counterparty would be forever barred and estopped from asserting any other claims arising under such contracts prior to the date of assumption and assignment and would be deemed to consent to the assumption and assignment of the Proposed Assumed Contract unless an objection was timely filed.

H.      The service and provision of the Assumption Notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of assumption and assignment of the Proposed Assumed Contracts or establishing a Cure Amount for the respective Proposed Assumed Contracts. Non-debtor counterparties to the Proposed Assumed Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Proposed Assumed Contract and the Cure Amount set forth in the Assumption Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-debtor counterparty from accepting performance by, or rendering performance to, Buyer for purposes of section 365(c)(1) of the Bankruptcy Code). The deadline (the "**Contract Objection Deadline**") to file an objection to the Debtors' ability to assume and/or assign the Proposed Assumed Contract or to the stated Cure Amounts (a "**Contract Objection**") has expired, except with respect to Planthaven International, Inc. ("**Plant Haven**"), and to the extent any such party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn, overruled by this Sale Order, or continued for a later hearing. The Contract Objections which remain unresolved are identified in **Exhibit 3** and are referred to herein as the "**Pending Objections**". For purposes of this Sale Order, "Pending Objections" shall include any timely filed objection by Plant Haven.

5

I.    **Corporate Authority**.    Through this Sale Order, the Debtors' sale of the Acquired Assets is duly and validly authorized by all necessary corporate action and the Debtors have all the power and authority necessary to consummate the transactions contemplated by the Purchase Agreement.

J.    **Sale in Best Interests of the Debtors' Estates**.    Good and sufficient reasons for approval of the Purchase Agreement and the transactions to be consummated in connection therewith (the "**Sale**") have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Debtors have demonstrated both (a) good, sufficient, and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize creditor recoveries.

K.    The Sale must be approved and consummated promptly in order to preserve the viability of the Debtors' businesses as a going concern and to maximize the value of the Debtors' estates. Time is of the essence in consummating the Sale. Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

L.    The consummation of the Sale and the assumption and assignment of the Assumed Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

M.    **Highest or Otherwise Best Offer**.    The Debtors conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Bidding

6

4831-7340-2734.v5

Procedures Order.  The Auction conducted in accordance with the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets.  The Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer for the Acquired Assets. The Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets is a valid and sound exercise of their fiduciary duty and constitutes a valid and sound exercise of the Debtors' business judgment.

N.    **Good Faith of Buyer and Sellers**.  The Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions and is substantively and procedurally fair to all parties. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order, and, among other things: (a) the Debtors and the Buyer complied with the provisions in the Bidding Procedures Order; (b) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; and (c) all payments to be made by the Buyer in connection with the Sale have been disclosed.  The Buyer is purchasing the Acquired Assets, in accordance with the Purchase Agreement, in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  The Buyer is therefore entitled to all of the protections afforded by such provision, and otherwise has proceeded in good faith in all respects in connection with the Debtors' chapter 11 cases.  None of the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Buyer

4831-7340-2734.v5

has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders.

O.    **Consideration**.    The consideration to be provided by Wells Fargo under the Purchase Agreement is comprised of (i) a cash payment not to exceed $22,000,000.00 in an amount sufficient to satisfy the Encumbrances of Capital Farm Credit FLCA ("**CFC**") on the Debtors' owned real estate, (ii) a credit bid in the amount of $52,000,000.00, (iii) Wells Fargo's agreement to exclude cash and cash equivalents at the time of Closing and to allow the Debtors to use that cash as set forth in the Purchase Agreement, and (iv) Wells Fargo's agreement to pay certain accounts receivable collections up to $5,000,000.00 to Debtors on the terms specified in the Purchase Agreement. Buyer has agreed that the budgets referenced in Purchase Agreement Sections 2.1.2 and 2.2.14 shall include funding for payment of claims with priority under Bankruptcy Code section 503(b)(9) in amounts previously estimated by Debtors. Debtors have stipulated and no party has disputed that Buyer has a valid and perfected first priority security interest in all of the Acquired Assets other than (i) certain titled vehicles and rolling stock, in which Buyer's lien may not be perfected, (ii) the Debtors' owned real estate, in which Buyer holds a second priority Encumbrances junior only to CFC's, (iii) the purported liens asserted by Deere & Company and Wilbur-Ellis Company LLC, and (iv) certain *ad valorem* property taxes. The consideration provided by the Buyer pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Acquired Assets, and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined and used in each of the Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States any state, territory, possession, or the District of Columbia. No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Buyer.

P.    **No Fraudulent Transfer**.    The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the

4831-7340-2734.v5

laws of the United States, any state, territory or possession thereof, or the District of Columbia. Neither the Debtors nor the Buyer is entering into the transactions contemplated by the Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

Q.      **No Successor**.  The transactions contemplated under the Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of the Buyer with the Debtors or their estates; there is not substantial continuity between the Buyer and the Debtors; there is no continuity of enterprise between the Debtors and the Buyer; the Buyer is not a mere continuation of the Debtors or their estates; and the Buyer is not a successor or assignee of the Debtors or their estates for any purpose.  Except for the Assumed Liabilities and Permitted Exceptions, the (i) transfer of the Acquired Assets to the Buyer and (ii) assumption, as applicable, and assignment to the Buyer of the Assumed Contracts, do not and will not subject the Buyer to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

R.      **Free and Clear**.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Acquired Assets free and clear of any Encumbrance therein or thereon, other than the Assumed Liabilities and Permitted Exceptions.

S.      The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale to the Buyer and the assumption of any Assumed Liabilities by the Buyer were not free and clear of all Encumbrances other than the Assumed Liabilities and Permitted Exceptions. The Debtors may sell the Acquired Assets free and clear of any Encumbrances of any kind or nature whatsoever, except as set forth in this Sale Order, because, in each case one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Each entity with an Encumbrance (other than an Assumed

Liability or a Permitted Exception) that is attached to the Acquired Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Encumbrance; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Encumbrances who did not object to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

T.    **Assumed Contracts/Cure/Adequate Assurance**.  The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the Purchase Agreement, is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  **"Assumed Contracts"** shall mean and refer to all of the Proposed Assumed Contracts excluding (i) the pending Assumed Contracts which the Court orders are not subject to assumption and assignment pursuant to the procedures provided in paragraph **29** of this Sale Order, and (ii) such executory contracts and unexpired leases which the Buyer determines to exclude from the Acquired Assets as set forth in the Purchase Agreement and paragraph **22** of this Sale Order.

U.    Payment of the Cure Amounts shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of section 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assumed Contracts, within the meaning of section 365(b)(1)(B) and 365(f)(2)(A)  of the Bankruptcy Code.

V.    The Buyer's financial wherewithal to consummate the transactions contemplated by the Purchase Agreement and the evidence presented at the Sale Hearing demonstrating the Buyer's ability to perform the obligations under the Assumed Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of

4831-7340-2734.v5

section 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

NOW, THEREFORE, IT IS ORDERED THAT:

1.      **Motion Is Granted**.  The Motion and the relief requested therein is **GRANTED** and **APPROVED**, as set forth herein.

2.      **Objections Overruled**.  Subject to paragraph **29** of this sale order, any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or set forth herein, are denied and overruled on the merits with prejudice.

3.      **Approval**.  The Purchase Agreement, other ancillary documents, and all of the terms and conditions thereof, are approved.  Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to: (a) execute the Purchase Agreement, including any Purchase Agreement specifying a Designated Purchaser (including without limitation TreeSap Farms, LLC or an affiliate thereof as the Designated Purchaser for certain personal property of Hines Growers, Inc., including, but not limited to, the Target Contracts identified on **Exhibit 4** to this Sale Order), along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, provided that such additional documents do not materially change its terms adversely to the Debtors' estates; (b) consummate the Sale in accordance with the terms and conditions of the Purchase Agreement and the instruments to the Purchase Agreement contemplated thereby; and (c) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the Purchase Agreement, including the sale of all the Acquired Assets and the assumption and assignment to the Buyer (in accordance with the Purchase Agreement and sections 363 and 365 of the Bankruptcy Code) of the Assumed Contracts together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale.  Any officer of the Debtors is authorized to execute and deliver the Purchase

11

Agreement and the other documents that are necessary to consummate the transactions set forth in the Purchase Agreement.

4.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of the Debtors, all holders of equity interests in the Debtors, any holders of claims (as defined in section 101(5) of the Bankruptcy Code), Encumbrances or other interests in, against or on all or any portion of the Acquired Assets (whether known or unknown), the Buyer and all successors and assigns of the Buyer, the Acquired Assets and any trustees, if any, subsequently appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases. This Sale Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Buyer (including any assignee or designee of the Buyer), and the respective successors and assigns of each of the foregoing.

5.      **Transfer of Acquired Assets Free and Clear of Encumbrances**. Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets to the Buyer in accordance with the Purchase Agreement; such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and shall vest the Buyer with title in and to the Acquired Assets. Other than the Assumed Liabilities and Permitted Exceptions, the Buyer shall take title to and possession of the Acquired Assets free and clear of all Encumbrances and other interests of any kind or nature whatsoever, including but not limited to successor or successor-in-interest liability and Encumbrances in respect of the Excluded Liabilities. At the Closing, Buyer shall pay the Farm Credit Payment to CFC.

6.      The Debtors, their agents, and all other persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are authorized and directed to surrender possession of such Acquired Assets to the Buyer in accordance with the Purchase Agreement on the Closing Date. On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Encumbrances or other interests in the Acquired Assets (other

12

than the Assumed Liabilities and Permitted Exceptions), if any, as such Encumbrances may have been recorded or may otherwise exist.

7.    If any person or entity which has filed statements or other documents or agreements evidencing Encumbrances on or claims against all or any portion of the Acquired Assets (other than statements or documents with respect to the Assumed Liabilities or Permitted Exceptions) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all such Encumbrances or other interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors and the Buyer, individually and jointly, are authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets. Without limiting the foregoing, the sale of the Acquired Assets is free and clear of the liens and Encumbrances of CFC and Black Diamond Commercial Finance, L.L.C., as Agent and the other lenders under the Third Lien Term Loan Agreement dated as of December 23, 2014.

8.    On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the Debtors' interests in the Acquired Assets. This Sale Order is and shall be effective as a determination that, on the Closing Date, all Encumbrances or other interest of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date, other than the Assumed Liabilities and Permitted Exceptions, shall have been unconditionally released, discharged, and terminated as to the Acquired Assets, and that the conveyances described herein have been effected. This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or

13

contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.  A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrances, except those assumed as Assumed Liabilities and the Permitted Exceptions.

9.    **Prohibition of Actions against Buyer**.  Except with respect to the Assumed Liabilities and Permitted Exceptions, or as otherwise expressly provided for in this Sale Order or the Purchase Agreement, all persons and entities holding Encumbrances or other interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Acquired Assets or the transfer of the Acquired Assets to the Buyer in accordance with the Purchase Agreement, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors or assigns, its property or the Acquired Assets, such persons' or entities' Encumbrances in and to the Acquired Assets, including, without limitation, the following actions:  (a) commencing or continuing, in any manner, any action or other proceeding against the Buyer, its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against the Buyer, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Encumbrance against the Buyer, its successors, their assets, or their properties; (d) asserting any setoff or right of subrogation of any kind against any obligation due the Buyer or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, failing or

4831-7340-2734.v5

refusing to transfer or renew any license, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

10.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets or the Debtors' business sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Purchase Agreement.

11.    Any party designated by Wells Fargo as an assignee of some or all of its rights under the Purchase Agreement shall have all of the rights and obligations of a Buyer under this Sale Order. Wells Fargo shall remain jointly and severally liable with any Designated Purchaser with respect to amounts in clause (i)(B) of Section 12.13.2. of the Purchase Agreement

12.    All persons and entities are forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Purchase Agreement and this Sale Order.

13.    The Buyer has given substantial consideration under the Purchase Agreement for the benefit of the Debtors, their estates, and creditors. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Encumbrances against any of the Debtors or any of the Acquired Assets, other than with respect to the Assumed Liabilities or Permitted Exceptions. The consideration

15

provided by the Buyer for the Acquired Assets under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

14.    Notwithstanding the foregoing, nothing herein shall prevent (i) the Debtors from pursuing an action against the Buyer arising under the Purchase Agreement or the related documents, or (ii) any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, and other federal, state and local officials from properly exercising their police and regulatory powers.

15.    **Assumption and Assignment of Contract**s.    The Debtors are authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to the Buyer, in accordance with the Purchase Agreement, effective upon the Closing Date and payment of the Cure Amounts by Buyer, the Assumed Contracts free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than the Assumed Liabilities and Permitted Exceptions) and (b) execute and deliver to the Buyer such documents or other instruments as are necessary to assign and transfer the Assumed Contracts (and the Assumed Liabilities) to the Buyer in accordance with the Purchase Agreement.

16.    With respect to the Assumed Contracts: (a) each Assumed Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code; and (d) any provisions in any Assumed Contract (or state or local law or ordinances) that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty or additional payment, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (e) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each Assumed Contract, in accordance with the Purchase Agreement, have been satisfied; (f) the

4831-7340-2734.v5

Assumed Contracts shall be transferred and assigned to Buyer, and following the Closing Date shall remain in full force and effect for the benefit of, the Buyer in accordance with the Purchase Agreement, notwithstanding any state or local law or ordinances or any provision in any such Assumed Contract (including those of the type described in sections 363(l), 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Buyer in accordance with the Purchase Agreement; and (g) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest of and in each Assumed Contract.

17.    All defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as practicable by payment of the Cure Amounts. To the extent that any counterparty to an Assumed Contract did not object to the Debtors' assumption and assignment of such Assumed Contract or to its Cure Amount by the Contract Objection Deadline, such counterparty is deemed to have consented to the applicable Cure Amount and to the assumption and assignment of its respective Assumed Contract(s) to the Buyer in accordance with the Purchase Agreement and this Sole Order.

18.    If, not later than five (5) days prior to the Closing Date, a Buyer shall designate an executory contract or unexpired lease as a Target Contract, the Debtors shall, as soon as practicable thereafter, file with the Court and serve, by overnight delivery, on the counterparty to such Target Contract an Assumption Notice and such counterparty shall file any Contract Objection not later than fourteen (14) days thereafter. If no Contract Objection is timely filed, the Debtors are authorized and directed to assume and assign such Target Contract to the Buyer as determined by the Buyer without further notice to creditors or other parties in interest and without the need for further order of the Court, and such assumption and assignment shall be

17

subject to the terms of this Sale Order.  Nothing in this Sale Order shall inhibit the ability of Buyer to seek other or further orders of the Court in connection with the sale or other disposition of the Acquired Assets.  In the event of timely service of a Contract Objection, the Debtors shall bring the matter before the Court for hearing and the Target Contract may only be assumed and assigned to the Buyer as determined by the Court.

19.     Unless (i) otherwise represented by the Debtors in a separate pleading or in open court at the Sale Hearing or Continued Hearing (as defined below), (ii) in this Sale Order, (ii) pursuant to a contract or lease amendment entered into by the appropriate counterparty (any such amendment being deemed approved by this Sale Order) or (iii) as determined by the Court at the Sale Hearing or Continued Hearing, the Cure Amount provided in the Assumption Notice reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Contracts as of the Closing Date, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to the Buyer of the Assumed Contracts in accordance with the Purchase Agreement.  Debtors shall not agree to an increased Cure Amount for any agreement without prior notice to Buyer and over Buyer's objection.

20.     Upon the Debtors' assignment of the Assumed Contracts to the Buyer under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amounts as set forth herein, no default shall exist under any Assumed Contract, and no counterparty to any Assumed Contract shall be permitted (a) to declare a default by the Buyer under such Assumed Contract or (b) otherwise take action against the Buyer as a result of Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the relevant Assumed Contract.  Each non-debtor party to an Assumed Contract is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Buyer, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date, including those constituting Excluded Liabilities or, against the Buyer, any counterclaim, defense, setoff,

18

recoupment or any other Claim arising prior to or existing as of the Closing Date asserted or assertable against the Debtors, and (ii) imposing or charging against the Buyer any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignment to the Buyer of any Assumed Contract in accordance with the Purchase Agreement. The validity of such assumption and assignment of each Assumed Contract shall not be affected by any dispute between the Debtors and any non-debtor party to an Assumed Contract relating to such contract's respective Cure Amounts.

21.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assumed Contracts.

22.     Notwithstanding anything herein to the contrary, the Buyer may remove any executory contract or unexpired lease from the list of Assumed Contracts (and thereby exclude such contract or lease from the definition of Assumed Contracts), in which event such executory contract or unexpired lease shall not be assumed or assigned pursuant to this Sale Order.

23.     Except as provided in the Purchase Agreement or this Sale Order, after the Closing Date, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities, and all holders of claims for Assumed Liabilities are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

24.     **Good Faith**.  The transactions contemplated by the Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts) with the Buyer, unless such authorization is duly stayed pending such appeal.

19

25.    There has been no showing that the Debtors or the Buyer engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  The Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

26.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.  All of the provisions of this Sale Order are non-severable and mutually dependent. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

27.    **Non-Material Modifications**. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, on notice to the Committee, without further order of the Court; provided, that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.  Without limiting the foregoing, the Sellers and Buyer may, by mutual agreement, extend the Outside Date and permit multiple Closings without further order of the Court.

28.    **Subsequent Plan Provisions**.   Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order dismissing any of these cases or any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the Purchase Agreement or this Sale Order.

29.    **Resolution of Objections**.

4831-7340-2734.v5

a.      The Sale Hearing is hereby continued with respect to the Pending Objections (unresolved cure, adequate assurance, and assumption and assignment objections identified in **Exhibit 3**) to August 1, 2018 at 10:30 a.m. (ET) (the "**Continued Hearing**").    Notwithstanding any other provision of this Sale Order, the executory contracts and unexpired leases which are the subject of the Pending Objections shall not be Assumed Contracts except as determined by further order of the Court, or as agreed by the parties.

b.      Any Acquired Asset which is the subject of a Pending Objection which asserts that the Acquired Asset may not be sold without the objecting party's consent, shall not be included in the Acquired Assets pending further order of the Court, with the hearing on such objections to be held on August 1, 2018 as specified above.

c.      Notwithstanding any provision in this Sale Order and the Purchase Agreement, any inventory, product, material or other assets with or bearing the Monrovia® trademark, including but not limited to branded containers, tags, info labels, stakes and labeling and/or marketing materials (collectively, "**Monrovia Branded Assets**"), shall not be deemed an Acquired Asset, except in the event that (i) the Court enters an order authorizing the assumption by the Debtors and assignment to the Buyer of the License Agreement between Color Spot Holdings, Inc. and Monrovia Nursery Company ("**Monrovia**") dated September 1, 2015 (Control # 659), or (ii) Monrovia and Buyer enter into a license agreement pertaining to Monrovia Branded Assets, in which event the Monrovia Branded Assets shall be included in Acquired Assets to the extent covered by such license.    Any sale of Monrovia Branded Assets shall not be free and clear of, and shall remain subject to, Monrovia's trademark rights and Monrovia's ability to enforce such rights.    Nothing contained herein is a commitment on the part of Monrovia to enter into a licensing agreement with the Buyer.

d.      Notwithstanding any provision in this Sale Order and the Purchase Agreement, any inventory, product, material or other assets with or bearing the Southern

21

Living® Plant Collection and Encore Azalea® trademarks and brand, including but not limited to branded containers, tags, info labels, stakes and labeling and/or marketing materials (collectively, "**PDSI Branded Assets**"), shall not be deemed an Acquired Asset, except in the event that (i) the Court enters an order authorizing the assumption by the Debtors and assignment to the Buyer of the License Agreement between Color Spot Holdings, Inc. and Plant Development Services, Inc. ("**PDSI**") dated May 7, 2014 (Control # 661) and the License Agreement between Debtor Color Spot Holdings, Inc. and PDSI dated May 7, 2014 (Control # 660), or (ii) PDSI and Buyer enter into a license agreement pertaining to PDSI Branded Assets, in which event the PDSI Branded Assets shall be included in Acquired Assets to the extent covered by such license. Any sale of PDSI Branded Assets shall not be free and clear of, and shall remain subject to, PDSI's rights in the Southern Living® Plant Collection and Encore Azalea® trademarks and brand and its ability to enforce such rights. Nothing contained herein is a commitment on the part of PDSI to enter into a licensing agreement with the Buyer.

e.       The limited objection of Deere & Company [Docket No. 200] shall be heard and resolved by the Court at a date to be scheduled by Deere & Company and Wells Fargo, if not resolved prior to August 23, 2018 by good faith negotiations of those parties. To the extent the Court determines or the relevant parties agree Deere & Company has a valid and perfected first priority purchase money security interest in the assets which are the subject of its objection, such assets shall be excluded from the Acquired Assets, except as Deere & Company and the Buyer may otherwise agree. The limited objection of Wilbur-Ellis Company LLC ("**W-E**") [Docket No. 202] shall be heard and resolved by the Court at a date to be scheduled by W-E and ~~Wells Fargo, if not resolved prior to August 23, 2018 by good faith negotiations of the parties.~~ the Buyer. To the extent the Court determines or the relevant parties agree that W-E has a valid and perfected first priority security interest in the assets which are the subject of its objection (the "**W-E Asserted Lien**"), the W-E Asserted Lien shall be treated as a Permitted Exception under

22

*[handwritten margin annotation: "either (i) return the collateral secured by the W-E =; Asserted = Lien or = (ii) ⨯⨯"]*

the Purchase Agreement and this Sale Order and the Buyer shall satisfy W-E's lien in the

amount specified by the Court or agreed by the parties within five (5) days of such

determination or agreement.

      f.      Notwithstanding anything in this Sale Order or the Purchase Agreement to

the contrary, the liens of The City of Waco, Bosque County, Cherokee County, Denton

County, Cherokee County Appraisal District, Bexar County, McLennan County and

Walnut Springs ISD (collectively, the "**Taxing Authorities**") that secure payment of

property taxes for calendar year 2018 shall, to the extent such liens are first priority under

non-bankruptcy applicable law, be treated as "**Permitted Exceptions.**"  The Taxing

Authorities' rights to enforce any such liens, to the extent they are first priority, are

hereby preserved.

      g.      No provision of this Sale Order, the Motion, or the Purchase Agreement

shall authorize the Debtors to: (i) assume, assume and assign, or transfer any agreement,

including the Software End-User License Agreement, between any Debtor and SAP

America, Inc. ("**SAP**"); (ii) sell, transfer, or assign any software, proprietary information,

or cloud services owned, licensed, or provided by SAP or its licensors (the "**Software**")

to the Buyer; (iii) provide to the Buyer any rights or access to the Software, or to any

computers, equipment, hardware, or other property of the Debtors (collectively,

"**Computer Equipment**") on which the Software is installed, loaded, or embedded; or

(iv) use the Software or any Software-related services provided by SAP for the benefit of

the Buyer or any other third party.  Any Computer Equipment on which the Software is

loaded or embedded may be sold, transferred, or disposed of by the Debtors only if the

Debtors permanently delete all Software from Computer Equipment prior to its sale,

transfer, or disposal.  If the Debtors or Buyer wish to have any contract to which SAP is a

party assumed or assumed and assigned as part of the Sale, any assumption, assignment,

and cure issues related to any such contract shall be resolved by agreement between the

SAP, the Debtors, and the Buyer or, if no agreement can be reached, by further order of the Court upon adequate notice to the SAP, which shall have an opportunity to respond.

30.   **No Stay of Order**.   Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.   Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the Sale as soon as practicable.   Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

31.   **Calculation of Time**.   All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

[remainder of page intentionally left blank]

24

4831-7340-2734.v5

32.    **Retention of Jurisdiction**. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Buyer in accordance with the Purchase Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) interpret, implement, and enforce the provisions of this Sale Order and the Purchase Agreement; (b) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale; (c) protect the Buyer against any Encumbrances or other interests in the Debtors or the Acquired Assets of any kind or nature whatsoever; and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Contracts.

Dated: July 25, 2018
    Wilmington, Delaware

Honorable Laurie Selber Silverstein
United States Bankruptcy Judge

4831-7340-2734.v5